UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

LEON J. AKINS,

      Petitioner,

v.                                     Case No. 4:20cv346-MW-HTC

RICKY D. DIXON,[1]

      Respondent.

_____/

<u>REPORT AND RECOMMENDATION</u>

This matter is before the Court on Petitioner Leon Akins' ("Akins") petition under 28 U.S.C. § 2254, challenging a judgment and sentence from the circuit court of Leon County, Florida. ECF Doc. 1. After considering the petition, the record, the State's Response, ECF Doc. 8, and Petitioner's Reply, ECF Doc. 18, the undersigned recommends the petition be DENIED without an evidentiary hearing.

---

[1] Pursuant to Federal Rule of Civil Procedure 25, Ricky D. Dixon, the current Secretary of the Florida Department of Corrections, is substituted for Mark Inch. Fed. R. Civ. P. 25.

## I.    BACKGROUND

### A.    Offense and Conviction

Petitioner was indicted on September 27, 2012, in case number 2012-CF-2887, for first degree murder, attempted first degree murder, grand theft auto, and arson, arising out of the stabbing of two men, Willie Stephens and Bobby Bell.  ECF Doc. 8-1 at 32.  The pertinent evidence presented at the November 2014 trial is summarized below and is taken from the trial transcript, *id.* at 140-364; 8-2 at 1-174.

In the early morning hours of September 1, 2012, two men – Willie Stephens and Bobby Bell – were stabbed while in Stephens' trailer.  Bell survived, but Stephens died after being stabbed thirty-six times.  Neighbors heard the attack (but did not see it) and called police, who arrived just after neighbors saw Stephens' black truck, noted in the neighborhood for its sound system, drive off at a high rate of speed.

Bell testified he was asleep on the couch and was woken up by a loud banging on the door.  Stephens answered the door and the person outside told Stephens he was "Marie's Son" but did not give a name.  ECF Doc. 8-1 at 213.  After some time, Bell heard Stephens fall back and a loud rumble, which caused Bell to get up off the couch.  When he did, the assailant stabbed him in the left side, right side, and back

of the head as Bell ran toward the door. As he left, Bell saw Stephens lying on the floor and realized he had also been stabbed.

When police arrived, they put an alert out for the black truck, and, around a half hour after the attack, police received a report of a black truck on fire on a dirt road. It was Stephens' truck, and police noticed the speakers had been removed from the truck before it was lit on fire by a rag stuck in the gas tank. Witness Keith Penn testified he spoke with Petitioner shortly after the murder, and Petitioner attempted to sell him some large automobile speakers. Penn also testified that Petitioner left his cell phone in Penn's car, and Penn returned the phone to Petitioner.[2] *Id.*

Witness Traci Ives testified she was at a friend's house in the neighborhood when Petitioner showed up with blood on his shirt and "said he had just did [sic] a murder last night." *Id.* at 286. He also had blood on his pants. When someone at the home told Petitioner the police were going to be looking for him because Petitioner had killed Stephens, Petitioner stated, "he'll go to his funeral and piss all

_____

[2] In the Incident Report prepared by Investigator Wester, he stated that Penn's girlfriend, identified as "T. Walker," called the phone from her phone to remember the number and later contacted police, giving them that number and informing them of Penn's contact with Petitioner. ECF Doc. 8-3 at 151. T. Walker did not testify at trial.

over his grave because the nigga owes him money." *Id.* at 287. Ives also heard Petitioner have a conversation with police, promising them that he would come in the next day and speak with them. *Id.* at 288. Ives then left and called the police and told them where Petitioner was. *Id.*

Witness Victor Sanders testified that early in the morning of the murder, Petitioner called him to ask him to buy some speakers, but Sanders declined. *Id.* at 294-95. The prosecutor also elicited that, when previously interviewed, Sanders told them Petitioner was driving a black truck. Later, when Sanders was heading to work, he saw Petitioner walking down Glover Road, picked him up, and drove him to Magnolia Street. *Id.* at 298.

An officer testified that several hours after the murder, neighbors reported that someone was hiding under a pool liner in a nearby home. Police responded and found Petitioner hiding under the pool liner. He was searched and officers found identification and a cell phone on him. *Id.* at 307. He also made the following spontaneous statements to the arresting officer, "I'll tell you everything you need to know. I'm not going down for this alone." *Id.* at 311. When the officer urged him to stop talking, Petitioner replied, "Don't worry. You have the right one. I'm your suspect." *Id.*

Also, when Petitioner was arrested, Petitioner had a pair of blue jean shorts with him. *Id.* at 346. The police confiscated those shorts, and a DNA expert testified at trial that the shorts contained blood which matched the DNA of the victim with odds of one in 6.4 quadrillion. ECF Doc. 8-2 at 62. Additionally, the expert sampled DNA in other areas of the shorts to see who might have worn them. She found a major contributor of DNA that matched Petitioner with odds of 1 in 2.8 quintillion. *Id.* at 68.

Finally, Investigator Dilmore testified that the lead investigator, Investigator Wester, gave him Petitioner's cell phone and told him to examine the call logs and address book. Dilmore used a Cellebrite forensic tool to confirm the handset corresponded to the number they had for Petitioner. ECF Doc. 8-1 at 358-59. Also, Sgt. Corbitt testified he obtained (via a court order) phone records for Petitioner's cell phone number including call history and location history from Petitioner's provider. Sgt. Corbitt demonstrated to the jury how the location records confirmed that Petitioner's phone had been in the area of the murder, the area of the burned-out truck, and then back in the neighborhood near where Petitioner was found. ECF Doc. 8-1 at 363 to ECF Doc. 8-2 at 18.

Petitioner was found guilty on all counts and sentenced immediately after trial to life in prison.

### B.   Postconviction History and Timeliness

Under the Antiterrorism and Effective Death Penalty Act Of 1996 ("AEDPA"), a petitioner must file a habeas petition within one year of certain trigger dates. 28 U.S.C. § 2244(d)(1)(A)-(D). The applicable trigger date here is the date Petitioner's judgment and conviction became final. *Id.* § 2244(d)(1)(A). Petitioner filed a direct appeal (through counsel) to the First District Court of Appeals ("First DCA"), which affirmed, *per curiam* and without written opinion, on December 9, 2015. ECF Doc. 8-3 at 43; First DCA Case No.: 1D14-5552. He did not seek rehearing or review in the Florida or United States Supreme Court. ECF Doc. 1 at 3. The judgment and conviction, therefore, became final ninety (90) days later, i.e., on Tuesday, March 8, 2016.[3]

The one-year deadline is tolled by properly filed postconviction motions until the motions are fully resolved. *See* 28 U.S.C. § 2244(d)(2). Nothing was pending from March 8, 2016, until Petitioner filed his 3.850 motion on December 9, 2016.

---

[3] Petitioner filed a motion to correct sentencing errors on May 29, 2015, which was granted, and which led to an amended judgment on June 10, 2015. This does not affect the timeliness analysis.

ECF Doc. 8-3 at 50. Thus, 275 days ran off the AEDPA clock before the filing of the 3.850 motion. That motion was continuously pending through amendment,[4] a denial,[5] an affirmance in part/remand in part in First DCA 1D17-4038,[6] an evidentiary hearing on one ground,[7] a denial after remand,[8] a second appeal in First DCA 1D19-0472, until the issuance of the First DCA's mandate affirming the denial on August 10, 2020. ECF Doc. 8-4 at 208. In the meantime, on July 2, 2020, Petitioner had filed his federal petition, which is therefore timely.

## II.    LEGAL STANDARDS

### A.    AEDPA

The AEDPA governs a state prisoner's petition for habeas corpus relief. 28 U.S.C. § 2254. Under the AEDPA, relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[4] ECF Doc. 8-3 at 67 (Feb. 8, 2017).
[5] *Id.* at 154 (August 17, 2017).
[6] *Akins v. State*, 247 So. 3d 687 (Fla. 1st DCA May 25, 2018); ECF Doc. 8-3 at 250.
[7] ECF Doc. 8-4 at 135-63 (transcript of Feb. 1, 2019, evidentiary hearing).
[8] *Id.* at 124 (Feb. 4, 2019).

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  *White v. Woodall*, 572 U.S. 415, 419 (2014).  "Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision.  *Id.*  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of Petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should

apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Also, factual determinations by the state courts are "presumed to be correct, and the petitioner can rebut this presumption only by clear and convincing evidence." *Harrell v. Butterworth,* 251 F.3d 926, 930-31 (11th Cir. 2001) (citing *Mincey v. Head,* 206 F.3d 1106, 1130 n.58 (11th Cir. 2000)). The presumption of correctness afforded factual findings extends to both trial and appellate state courts. 28 U.S.C. § 2254(e)(1); *Jennings v. Crosby*, 392 F. Supp. 2d 1312, 1318 (N.D. Fla. 2005), *aff'd sub nom. Jennings v. McDonough*, 490 F.3d 1230 (11th Cir. 2007).

### B.    Ineffective Assistance of Trial Counsel Claims

Petitioner raises three grounds based on ineffective assistance of trial counsel ("IATC"). An IATC claim requires a showing that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The reasonableness of

counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689. The petitioner bears the burden of proving counsel's performance was unreasonable under prevailing professional norms and the challenged action was not sound strategy. *Id.* at 688-89.

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Id.* at 693. Petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Bare allegations of prejudice are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

## III. DISCUSSION

Petitioner raised all three IATC claims in the amended 3.850 motion and appeal thereof; thus, all claims have been exhausted. Also, because the First DCA did not explain its reasoning for affirming the state court's denial of relief as to any of the three grounds, this Court will "look through" the First DCA decisions to the state court's 3.850 order denying relief for the state's rationale. *Wilson v. Sellers,*

138 S. Ct. 1188, 1192 (2018).    As discussed further below, in doing so, the

undersigned finds an absence of clear legal error or a misapplication of the facts.

### A.    Ground One: IATC for Failing to Move for Removal of Biased Juror

During a break in the proceedings, and after Investigator Wester had testified,

juror Duane Gilbert notified a bailiff that when Investigator Wester was called to

testify, Gilbert realized he knew him.[9]  ECF Doc. 8-1 at 347.  The court advised the

parties of this information, noting that Gilbert said it would not make a difference in

him serving on the jury, but that he does know Investigator Wester "well."  *Id.*  In

Ground One, Petitioner argues his attorney was ineffective for failing to strike

Gilbert.

The state court denied relief, finding Petitioner had failed to show counsel's

performance prejudiced him.  As the state court correctly noted, post-conviction

relief based on a lawyer's incompetence with regard to the composition of the jury

"is reserved for a narrow class of cases where prejudice is apparent from the record,

where a biased juror actually served on the jury."  ECF Doc. 8-3 at 155 (citing

---

[9] Gilbert did not recognize Investigator Wester by name, and thus did not advise the court of his
knowledge of Wester during *voir dire*.  ECF Doc. 8-1 at 347.

*Jenkins v. State*, 824 So. 2d 977, 982 (Fla. 4th DCA 2002)); *Fennell v. Sec'y, Fla. Dep't of Corr.*, 582 F. App'x 828, 832 (11th Cir. 2014) (citing *Carratelli v. State*, 961 So. 2d 312, 324 (Fla. 2007)).  Here, there is no evidence in the record to show Gilbert was actually biased.  To the contrary, as stated above, Gilbert told the bailiff his knowledge of Wester was not going to make a difference on his ability to serve as a juror.  ECF Doc. 8-1 at 347-48.

In his Reply, Petitioner takes issue with the state court's additional determination that it was a reasonable trial strategy for counsel to leave Gilbert on the panel as he was the only juror who was of the same race, African-American, as Petitioner.  ECF Doc. 18 at 2.  Petitioner contends the trial court cannot infer counsel's decision was based on trial strategy without an evidentiary hearing.  *Id.* Regardless of whether the state court should have inferred counsel's decision was a strategic one, Petitioner must meet both prongs under *Strickland* to prevail and, here, the state court could have denied the claim based solely on the prejudice prong.  *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) (internal citations omitted) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").  Thus, even if the state court erred in

determining counsel's performance was not deficient, it would not make a difference to these proceedings.  Petitioner is not entitled to relief on Ground One.

## B.    Ground Two: IATC for Failing to Investigate Petitioner's Competency or Sanity at the Time of the Offense

In Ground Two, Petitioner argues trial counsel was ineffective for failing to have him evaluated for competency to stand trial and for sanity at the time of the offense.  The state court denied Petitioner relief, finding an evaluation was ordered to determine sanity at the time of the offense and whether statutory mitigating factors were present, but one was not necessary for competency because it was never raised as an issue.  ECF Doc. 8-3 at 156.  The First DCA reversed and remanded for the court to hold an evidentiary hearing on the claim.  *Akins v. State*, 247 So.3d 687, 689 (Fla. 1st DCA 2018).  On remand, the court held an evidentiary hearing where defense counsel testified, and denied relief in a written order.  ECF Doc. 8-4 at 124.

Applying *Strickland*, the court found Petitioner, once again, failed to meet the performance or prejudice prong.  Specifically, the court concluded that there was no legal basis to question Defendant's competency, nor request a second evaluation and that disclosing the confidential evaluation would have been deficient performance.  *Id.* at 125.  The court's conclusion was not contrary to, and did not involve an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d).

Counsel's testimony at the evidentiary hearing shows that a request for an additional or second evaluation to determine competency at trial would have been unsuccessful.  Contrary to Petitioner's testimony, defense counsel testified Petitioner met with Dr. Robison and submitted emails proving it.  Defense counsel testified that, in every death penalty case, he hires a mental health expert to examine a defendant for sanity at the time of the alleged offense and competency to assist counsel during the proceedings, as mental health condition is crucial to death penalty sentencing.  *Id.* at 145.  He testified that he chose Dr. Robison for the examination because his reputation was so strong that he could sometimes get the State to drop the death penalty if Dr. Robison found mental health issues.  *Id.* at 146.  He also explained that the evaluations are confidential and that he often did not share them with the State for strategic reasons.  *Id.*

Counsel further testified that he pushed Dr. Robison for any mental health mitigation Dr. Robison found to be beneficial.  However, Dr. Robison did not find any such information.  Instead, Dr. Robinson "found that Mr. Akins was sane, competent, not intellectually disabled; and he just didn't meet any of the criteria of

the death penalty mitigation statute." *Id.* at 150. Dr. Robison ordered and examined CAT scans and spoke with Petitioner about them but found no head injury. *Id.* at 152-53. Counsel presented emails between Dr. Robison and trial counsel memorializing these conversations and showing that Dr. Robison also spoke with Petitioner's family. *Id.* at 151-53.

Based on the above conversations with the doctor, counsel made the strategic decision not to request a formal report from Dr. Robison, not to share the confidential report with the State, and not to initiate incompetency proceedings. *Id.* at 153-54. Given the lack of any evidence to support the need for a second evaluation, any such motion to do so filed by counsel would have been denied. Trial counsel cannot be ineffective for not taking a futile action. *See e.g., Freeman v. Att'y Gen.,* 536 F.3d 1255, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim."). Likewise, Petitioner cannot show counsel's performance was prejudicial because he cannot show "there was a reasonable probability that he would have received a competency hearing *and* been found incompetent had counsel requested the hearing." *Lawrence v. Sec'y, Fla. Dep't of Corr.*, 700 F.3d 464, 479 (11th Cir. 2012) (emphasis in original).

Also, while Petitioner argues for the first time in his Petition and Reply that counsel knew of and should have turned over some Baker Act proceedings and other mental health records to Dr. Robison, this argument does not take the day. Petitioner does not identify what in those records, if anything, would have changed the outcome of Dr. Robison's evaluation of him. He provides no specifics of what the records would have contained or what they would have shown about his mental state. Petitioner's generalized and conclusory allegation is simply not enough to warrant a hearing. *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011).

Petitioner is not entitled to habeas relief on this claim.

**C.    Ground Three: IATC for Failing to Move to Suppress Evidence Illegally Obtained from a Cell Phone**

In Ground Three, Petitioner argues counsel was ineffective for failing to suppress location data evidence obtained from Petitioner's cell phone, which he contends was obtained without a warrant and thus in violation of his Fourth Amendment rights.

At trial, Investigator Dilmore testified he attached a Cellebrite to Petitioner's phone and "confirmed that the number [investigators had was] associated with that actual handset." ECF Doc. 8-1 at 358-59. Sgt. Christopher Corbitt testified that pursuant to a court order obtained by Investigator Wester, Sgt. Corbitt contacted the

phone's service provider, gave them the phone number, and obtained electronic copies of the phone records associated with that cell phone number. *Id.* at 363. Sgt. Corbitt testified about the information obtained from the provider, including records showing Petitioner's cell phone had been in the location of the murder in the trailer park, then at the location of the burned vehicle that had belonged to the victim, and then had moved in conjunction with Sanders' phone, as though the two were driving together from Glover Road to Magnolia Drive, back towards where Petitioner was found. ECF Doc. 8-1 at 364 & ECF Doc. 8-2 at 10-14 & 17-18.

Petitioner argues counsel should have moved to suppress the information obtained from the cell phone because law enforcement did not have a warrant to place the Cellebrite tool on Petitioner's phone. Petitioner admits Investigator Wester stated in his police reports that Akins had consented to the search of his cellphone but argues that nowhere in the record is there a signed consent form allowing law enforcement unwarranted access to the information stored in the phone. Also, Petitioner argues the fact that Investigator Wester obtained a warrant after they had obtained information from the phone shows Petitioner had not consented to the search.

The state court denied relief, finding a lack of prejudice. That determination was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d). Petitioner was not prejudiced by the admission of Sgt. Corbitt's testimony because even without that testimony, the State had sufficient evidence to tie Petitioner to the crime scene and the stabbings. As discussed above, the evidence included officers finding Petitioner under a tarp near the scene; testimony regarding Petitioner's attempts to sell the speakers that were on Stephens' truck, Petitioner's admissions regarding the stabbings to law enforcement and multiple witnesses, and DNA evidence on Petitioner's shorts tying Petitioner to the victims' blood. Based on this overwhelming evidence, the state court was not unreasonable in concluding that there was no reasonable probability of a different outcome even if the cellphone data had been excluded.[10] *See Holladay*, *supra*.

Petitioner is not entitled to relief on this Ground.

---

[10] In his Reply, Petitioner takes issue with the state court's finding that regardless of the use of Cellebrite, law enforcement had sufficient information to obtain the phone number and cellular provider for Petitioner's cell phone. ECF Doc. 18 at 7. Petitioner argues this finding is based on the "inevitable discovery doctrine," which cannot apply because there is no evidence law enforcement was in "active pursuit." *Id.* Because the state court's denial of relief was based on a lack of prejudice, the Court need not address that argument.

## IV.    CONCLUSION

### A.    Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted.    In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007).    Additionally, this Court must take into account the deferential standards prescribed by § 2254. *See id.*  Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 574.

### B.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "[B]efore entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

It is respectfully RECOMMENDED:

1.      That the petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Akins*, Leon County, Florida case number 2012 CF 2887, ECF Doc. 1, be DENIED without an evidentiary hearing.

2.      That a certificate of appealability be DENIED.

3.      That the clerk be directed to close the file.

At Pensacola, Florida, this 10th day of January, 2023.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.